775 A.2d 727 (2001)
342 N.J. Super. 83
STATE of New Jersey, Plaintiff-Appellant,
v.
Donnell WILLIAMS, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted June 4, 2001.
Decided July 6, 2001.
*728 Robert D. Bernardi, Burlington County Prosecutor, for appellant (Deborah A. Siegrist, Assistant Prosecutor, of counsel and on the brief).
Peter A. Garcia, Acting Public Defender, for respondent (Mark H. Friedman, Assistant Deputy Public Defender, of counsel and on the brief).
Before Judges WEFING, CUFF and LISA.
The opinion of the court was delivered by LISA, J.A.D.
By leave granted, the State appeals from an order permitting defendant to withdraw his guilty plea and vacating his conviction of endangering the welfare of a child, a third-degree crime, in violation of N.J.S.A. 2C:24-4a. Because the endangering was by sexual conduct, defendant is subject to the provisions of Megan's Law, requiring registration as a sex offender, N.J.S.A. 2C:7-2, and imposition of community supervision for life.[1]N.J.S.A. 2C:43-6.4. Defendant was granted leave to withdraw his plea because of his assertion that he did not fully understand the consequences of community supervision for life. The State argues that defendant should not have been permitted to withdraw his plea because it was knowing, intelligent and voluntary, because no manifest injustice has been shown, and because defendant did not show he was misinformed or that the sentence violated his reasonable expectations. We agree and reverse.
On July 22, 1997, defendant pled guilty to the endangering charge which is the subject of this appeal, and to unrelated motor vehicle theft and residential burglary *729 charges under two separate accusations. At the time of his plea, defendant was twenty-three years old and represented by counsel. He had completed twelfth grade and could read and write. The endangering charge arose out of sexual improprieties with a fourteen-year-old girl. The indictment contained two additional counts arising out of the same incident: second-degree sexual assault by committing an act of sexual penetration (N.J.S.A. 2C:14-2c(5))[2] and fourth-degree criminal sexual contact (N.J.S.A. 2C:14-3b). Pursuant to a plea agreement, these two counts (as well as other unrelated property offenses) were dismissed at sentencing.
The plea agreement was effectuated by completion of the basic three page plea form and the two page standard supplemental form entitled "Additional Questions for Certain Sexual Offenses." At the plea hearing, defense counsel stated that "[w]e did go over the plea forms that are provided for certain sexual offenses under Megan's Law. I did indicate to him the offenses that are applicable." The judge then engaged in the following colloquy with defendant:
Q. I have before me the plea form, as well as the supplemental form concerning the Megan's Law, the sexual offenses. Is this your signature and initials?
A. Yes, they are.
Q. Before you signed or initialed these, did you read everything?
A. Yes, I did.
Q. Did you go over everything with your attorney?
A. Yes, I did.
Q. He explain everything to you?
A. Yes, he did.
Q. You understand it all?
A. Yes, I do.
Q. Are your answers truthful?
A. Yes, they are.
Q. And did you sign this and initial it voluntarily?
A. Yes, I have.
Q. You've been represented by counsel?
A. Yes, I have.
Q. Has Mr. Ackerman answered all the questions you have in regard to these matters?
A. Yes, he has.
Q. Are you satisfied he spent a sufficient amount of time to go over every offense with you?
A. Yes, I am.
Q. Did he explain to you the elements of the offense, the possible defenses, the weaknesses of your case, the strengths of your case, the advantages and disadvantages of the plea bargain?
A. Yes, he has.
Q. Are you satisfied he spent a sufficient amount of time to review and go over and explore any avenue of defense that you thought was appropriate?
A. Yes.
Q. Under all of the circumstances, you think he did a good job for you?
A. Yes, I do.
Q. Are you satisfied with his representation?
A. Yes, I am.
In accepting the plea, the judge found it was made voluntarily and that defendant understood the nature of the charge and the consequences of his plea.
The plea agreement recommended a probationary sentence with a condition of *730 county jail concurrent on all charges, which was imposed by a different judge on October 31, 1997. At the sentencing proceeding, the judge expressly advised defendant: "[y]ou are subject to the conditions of community supervision for life ... and you will have to register with the appropriate authorities." Further, the judgment of conviction stated that defendant "is subject to Registration and Notification pursuant to 2C:7-1 et seq. and Community Supervision for Life pursuant to 2C:43-6.4."
On October 5, 1999, defendant signed and acknowledged receipt of a copy of the terms and conditions of community supervision for life. Between February and October 2000, two indictments were returned and three additional complaints were issued, charging defendant with failure to register and violations of the terms of community supervision for life.
On December 5, 2000, defendant moved for leave to vacate his plea, which was heard by a third judge. Over the State's objection, the motion judge granted the motion. Since he was not involved in defendant's plea or sentence, he relied upon the record of preceding events and found:
[M]r. Williams did plead and was sentenced and did receive a community supervision for life obligation. The form currently in use was provided to him sometime subsequent to his having pled and been sentenced. The form itself is dated October 5, 1999, quite awhile after the 1997 Court events where he gave his plea to [the plea judge] and was sentenced by [the sentencing judge]. And it's clear to me from a review of the transcript that the specific conditions of community supervision for life were not made known to Mr. Williams through no fault of anyone. It just was the then state of the law, so to speak. The form has now helped.
The judge further accepted defense counsel's certification and representations that had defendant known the specific conditions of community supervision for life and the consequences of violation (prosecution for a fourth-degree crime) he would not have pled guilty to this count; instead he would have either gone to trial on all counts or attempted to plead only to the fourth-degree criminal sexual contact, which is not subject to Megan's Law. Relying on State v. Horton, 331 N.J.Super. 92, 751 A.2d 141 (App.Div.2000), the judge allowed defendant to withdraw his plea.
Among the requirements for the validity of a guilty plea is that the plea is given with sufficient understanding of the nature of the charge and the consequences flowing from it. State v. Barboza, 115 N.J. 415, 420-21, 558 A.2d 1303 (1989). Provision is made in our court Rules to procedurally assure this safeguard. Rule 3:9-2 requires the judge to address the defendant personally and determine that the plea is made voluntarily and "with an understanding of the nature of the charge and the consequences of the plea."
Although a more liberal standard is applied on an application to withdraw a plea prior to sentencing, after sentencing withdrawal shall be permitted only to correct a manifest injustice. R. 3:21-1; State v. Taylor, 80 N.J. 353, 360, 403 A.2d 889 (1979); State v. Fischer, 38 N.J. 40, 48, 183 A.2d 11 (1962); State v. Deutsch, 34 N.J. 190, 198, 168 A.2d 12 (1961). Further, a plea entered pursuant to a plea agreement is entitled to a higher degree of finality. State v. Smullen, 118 N.J. 408, 416, 571 A.2d 1305 (1990); State v. Gonzalez, 254 N.J.Super. 300, 303, 603 A.2d 516 (App. Div.1992).
Defendant does not assert his innocence or lack of a factual basis for his crime. Nor does he deny that he knew, at the *731 time he entered his plea, that he would be sentenced to community supervision for life. Indeed, the plea form defendant signed, reviewed with his attorney, and acknowledged his understanding of to the plea judge, provides that he "must" register, "must" notify law enforcement of a change of address, and "will" receive a special sentence of community supervision for life. This information was confirmed by the sentencing judge at sentencing and in his judgment of conviction.
We find Horton, supra, 331 N.J.Super. 92, 751 A.2d 141, to be materially distinguishable from defendant's situation. Horton's plea agreement merely recommended a probationary sentence with county jail time in exchange for a plea to third-degree endangering by sexual conduct, with no mention of community supervision for life. The supplemental plea form for sexual offenses was not utilized.[3] At the plea hearing, the judge inquired and Horton acknowledged he understood that his plea would subject him to certain other requirements that "may" be imposed by Megan's Law and that defendant would have to "register with the Burlington County Prosecutor's Office." Id. at 94, 751 A.2d 141. The judge then engaged in further colloquy with Horton by which he implied that whether or not community supervision for life would be imposed depended on a determination by the prosecutor, which he could contest at a hearing, thus informing Horton "you may, in fact, be subject to community supervision." Id. at 94-95, 751 A.2d 141. Horton's judgment of conviction did not provide for community supervision for life.
Horton was sentenced on January 12, 1996. Ibid. He completed serving his sentence on January 12, 1998. After the State Parole Board wrote letters inquiring about the absence of the community supervision provision in the judgment of conviction, the prosecutor moved on July 24, 1997 to amend the judgment to add it. Id. at 95-96, 751 A.2d 141. On January 25, 1999, the trial court determined to grant the State's motion and entered an amended judgment of conviction on January 27, 1999, which defendant then promptly appealed to this court. Id. at 96, 751 A.2d 141.
Unlike Horton, defendant here was informed from the very outset that community supervision for life is mandatory and would be imposed as part of his sentence. Our Rules require that a defendant complete and sign the applicable official plea forms as a prerequisite to acceptance of a plea. R. 3:9-2. These forms, approved by the Administrative Director of the Courts, ibid., are designed to inform defendants of material aspects and consequences of a plea. With respect to Megan's Law offenses, the material consequences are that the offender will be mandatorily required to register, notify of change of address, and be subject to lifetime supervision.[4] These required forms are "a crucial document serving to inform the defendant of the consequences of a guilty plea," State v. Warren, 115 N.J. 433, 444, 558 A.2d 1312 *732 (1989), not insignificant "boilerplate forms" as argued by defendant.
While it is not standard procedure for a court to solely rely on a written plea form when taking a plea, State v. Kovack, 91 N.J. 476, 484 n. 1, 453 A.2d 521 (1982), we are satisfied that the combination of the colloquy about the supplemental plea form and the clear language of the form constituted an adequate inquiry by the court to satisfy the requirements of Rule 3:9-2. This defendant was in no way misinformed, as was Horton, of the consequences of his plea, and he was informed adequately of the material aspects flowing from Megan's Law.
The fact that defendant first learned of the specific details of community supervision for life when he signed the terms and conditions form two years after being sentenced is inconsequential. Community supervision for life commences after completion of the sentence imposed pursuant to other applicable provisions of the Criminal Code. N.J.S.A. 2C:43-6.4b. Therefore, we find nothing unusual in this two year hiatus. We further note that whereas Horton sought relief promptly when his judgment of conviction was amended to impose community supervision for life, this defendant sought no relief until nearly three and one-half years after his plea, more than three years after his sentence and judgment of conviction, and fourteen months after he signed the terms and conditions. This delay belies defendant's assertion that the sentence did not meet his reasonable expectations. See State v. Howard, 110 N.J. 113, 123, 539 A.2d 1203 (1988).
We reject defendant's argument that Horton requires that unless a defendant is expressly advised that he would be subject to lifetime "parole" he is entitled to withdraw his plea. In our view, this is an overly-restrictive reading of Horton. "Persons serving a special sentence of community supervision shall be supervised as if on parole and subject to conditions appropriate to protect the public and foster rehabilitation." N.J.S.A. 2C:43-6.4b (emphasis added). The individual is not actually on parole. This provision is merely part of a scheme in which the Parole Board is vested with the responsibility to provide the supervision, while the manner and nature of the supervision will be similar to that of those on parole. Thus, we deem the use of the term "parole" in Horton to be interchangeable with "community supervision for life."
The motion judge was not called upon to make credibility findings. He based his findings regarding defendant's knowledge of the consequences of the plea on the record of prior proceedings. Accordingly, he interpreted the law and the legal consequences that flow from established facts on this issue. Such findings are not entitled to any special deference by a reviewing court. Manalapan Realty v. Manalapan Township Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995). Our review of those proceedings leads us to conclude that defendant was adequately informed of the material consequences of his plea, and withdrawal of the plea is not warranted. There has been no manifest injustice.
The order permitting withdrawal of defendant's plea and vacation of his sentence is reversed. The defendant's conviction and sentence are reinstated.
NOTES
[1] A person sentenced to community supervision for life may petition for release from that sentence if the person has not committed a crime for fifteen years from the last conviction or release from custody and is not likely to pose a threat to the safety of others. N.J.S.A. 2C:43-6.4c.
[2] This offense is currently designated at N.J.S.A. 2C:14-2c(4) (amended 1997).
[3] We reject defendant's argument that the State must prove that the supplemental plea forms were not used in Horton if this case is to be distinguished. Our opinion in Horton sets forth a verbatim recitation of the State's plea recommendation, after which we observed "This sentencing recommendation is the same as that stated in the plea form signed by defendant." Horton, supra, 331 N.J.Super. at 94, 751 A.2d 141. We are confident that had the supplemental form been part of the "plea form signed by defendant" it would have been discussed in the opinion.
[4] The form also describes other consequences for certain sex offenses, which are not applicable here.