832 A.2d 360 (2003)
363 N.J. Super. 220
STATE of New Jersey, Plaintiff-Respondent,
v.
Ronald JAMGOCHIAN, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued September 9, 2003.
Decided October 6, 2003.
*361 Joseph S. Murphy, Ringwood, argued the cause for appellant.
Joseph J. D'Onofrio, Jr., Assistant Prosecutor, argued the cause for respondent (Michael M. Rubbinaccio, Morris County Prosecutor, attorney; Joseph Connor, Jr., Assistant Prosecutor, on the brief).
Before Judges PRESSLER, CIANCIA and COLEMAN.[1]
The opinion of the court was delivered by CIANCIA, J.A.D.
This is an appeal from the denial of post-conviction relief without an evidentiary hearing. Because we are persuaded that a prima facie claim for relief was shown, we remand for an evidentiary hearing. State v. Preciose, 129 N.J. 451, 462-464, 609 A.2d 1280 (1992).
Defendant Ronald Jamgochian entered guilty pleas to second-degree sexual assault, N.J.S.A. 2C:14-2c(1), and second-degree possession of a weapon by certain persons not to have weapons, N.J.S.A. 2C:39-7. In accordance with the plea agreement, defendant was sentenced as a third-degree offender. A four-year term of imprisonment was imposed for each offense, the sentences to run concurrently. Defendant took no direct appeal. He was released from prison in October 2001.
Defendant's petition for post-conviction relief centers primarily on the restrictions imposed upon him because he is subject to community supervision for life pursuant to the provisions of Megan's Law. See N.J.S.A. 2C:43-6.4.
It is defendant's position that he needs to travel outside the United States for business, health, and family reasons. He contends he specifically inquired of his attorney, before agreeing to plead guilty, as to whether he would be free to travel once his prison term was served. His attorney allegedly "made it quite clear" that defendant would not be subject to any travel limitations as long as the Avenel evaluation did not find him to be a threat to himself or society. Defendant further stated in his petition that his attorney conferred with the trial judge and reported back to defendant "that the judge said nothing that he, the judge, would sentence him to do, would prevent him from traveling or leaving the state, after his sentence was served." A certification from the attorney who represented *362 defendant at the time of the plea gives this version of events:
I took this proposal to my client who was waiting outside of chambers with his wife and family. The Defendant had a question pertaining to section 4 of the supplemental Plea Form. He asked about Community Supervision; specifically, whether it would in any way restrict his traveling ability to pursue health, business and personal needs. I told him I was not aware of any travel restrictions but would seek the answer from the Court. He stated that it would be hard for him to accept this plea, but that he would agree if he could travel outside New Jersey after he served his jail sentence.
I entered [the judge's] chambers again and inquired what Community Supervision would entail; and if there were any specific travel restrictions. To the best of my recollection, [the judge][2] responded with words to the effect that: "I don't know what that is, but I am not imposing anything here today that will stop him from traveling once he has completed his sentence. He can leave the country or do whatever. He will have to register once per year as long as he is here though."
I went back to my client and explained the answers as they were given to me by the Court. My client accepted the plea with the understanding that the consequences of his plea would in no way prohibit him from traveling after he had completed his jail time. If he had known that he would be on parole for life, unable to leave the state and freely travel, there is no doubt in my mind that he would have chosen to try the case. So far as I know, he was sentenced while believing that he would not be subject to any restrictions on his freedom to leave the state or the country after his sentence was served. I have known this client for many years. I believe he would not have pleaded guilty if he knew he could not leave the State of New Jersey after serving his jail sentence. Looking back, I do not believe that anyone understood the ramifications of Community Supervision until much later. None of us had any idea then a defendant could not leave the State after completing the service of his sentence.
It is clear that a guilty plea may be accepted only if the defendant understands the consequences of the plea. R. 3:9-2. We believe it equally clear, and the State does not argue to the contrary, that community supervision for life imposed pursuant to N.J.S.A. 2C:43-6.4 is a penal and not a collateral consequence of the sentence. See generally State v. Burford, 163 N.J. 16, 21-22, 746 A.2d 998 (2000); State v. Heitzman, 209 N.J.Super. 617, 622, 508 A.2d 1161 (App.Div.1986), aff'd o.b., 107 N.J. 603, 527 A.2d 439 (1987); State v. Kovack, 91 N.J. 476, 483, 453 A.2d 521 (1982). "Persons serving a special sentence of community supervision shall be supervised as if on parole and subject to conditions appropriate to protect the public and foster rehabilitation." N.J.S.A. 2C:43-6.4b. Indeed, the regulations of the Department of Corrections setting forth the available terms and conditions of community supervision for life are virtually the mirror image of the regulations specifying the terms and conditions of parole. Compare respectively N.J.A.C. 10A:71-6.11 with N.J.A.C. 10A:71-6.4.
The State's contention in the present case that defendant should have applied *363 to the parole authorities for relief from the travel restrictions rather than filing a petition for post-conviction relief is incorrect. Defendant seeks to withdraw his guilty plea to the sexual assault conviction because he was allegedly misinformed as to the penal consequences. He also alleges the concomitant claim of ineffective assistance of counsel in failing to properly advise him as to the restrictions encompassed within the ambit of community supervision for life.[3] In our view, defendant's legal theory and procedural posture are both correct. As to the former, a guilty plea entered without sufficient understanding of the penal consequences is ordinarily invalid. State v. Barboza, 115 N.J. 415, 420-421, 558 A.2d 1303 (1989); R. 3:9-2. Even misinformation about a collateral consequence may vitiate a guilty plea if the consequence is a material element of the plea. State v. Howard, 110 N.J. 113, 122, 539 A.2d 1203 (1988); State v. Garcia, 320 N.J.Super. 332, 339-341, 727 A.2d 97 (App.Div.1999).
As to the latter, in State v. Williams, 342 N.J.Super. 83, 775 A.2d 727 (App.Div.2001), we addressed a claim analogous to that now being raised by defendant and rejected it on the merits, but we found no defect in the issue being raised by way of post-conviction relief. A defendant may well have the opportunity to negotiate certain terms and conditions of supervision with parole personnel, but that opportunity does not preclude defendant's entitlement to apply for post-conviction relief and seek the withdrawal of a guilty plea.
The State also argues that defendant's position on the merits should be denied based upon our decision in Williams, supra. There we found, in light of the facts presented, that defendant's belated realization of the details of community supervision was insufficient to justify a withdrawal of his guilty plea. Cf. State v. Freudenberger, 358 N.J.Super. 162, 817 A.2d 371 (App.Div.2003) (failure to inform defendant of potential consequences of special parole supervision mandated by the No Early Release Act is sufficient to allow withdrawal of defendant's guilty plea). Here however, unlike in Williams, defendant contends not just that he was uninformed but that he was misinformed. We noted a similar distinction in Williams, supra, 342 N.J.Super. at 90-91, 775 A.2d 727.
In State v. Horton, 331 N.J.Super. 92, 751 A.2d 141 (App.Div.2000), defendant alleged he was essentially misinformed when he pled guilty to endangering the welfare of a child. "Community supervision" was mentioned as a possible consequence of his plea but, in fact, it was not imposed as part of defendant's judgment of conviction. Only well after defendant had completed his jail time and was on probation did the prosecutor, at the prompting of the State Parole Board, seek to impose community supervision for life. We remanded for an evidentiary hearing to determine if defendant had been misinformed and whether the correct information would have made any difference in defendant's decision to plead guilty. Id. at 102-104, 751 A.2d 141; accord State v. Howard, supra, 110 N.J. at 123, 539 A.2d 1203 (1988).
Similarly, defendant here was entitled to an evidentiary hearing. He alleges misinformation as to a penal consequence *364 and also that if he had been correctly informed he would have not entered a guilty plea. Those contentions present a prima facie claim to post-conviction relief. Preciose, supra, 129 N.J. at 462, 609 A.2d 1280. In addition to the defendant's certification and his attorney's certification, as previously referenced, we note that nowhere in the plea or sentencing proceeding was there any explanation of community supervision for life that would have alerted defendant to the possibility of travel restrictions. On the contrary, when taking defendant's plea the judge said, "[d]o you understand that if you ever change your residence that you have a responsibility to notify them of a change of residence," thereby implying a ministerial act and not the request for permission that is actually required.[4]
Accordingly, we vacate the order denying defendant's petition for post-conviction relief and remand for an evidentiary hearing as to whether he was misinformed about community supervision for life and, if so, whether the correct information would have caused defendant to go to trial rather than plead guilty to second-degree sexual assault. As we read defendant's papers, he has not sought to withdraw his plea to the weapons charge.
We add by way of dictum that we do not today go so far as to hold that a trial court has the obligation to inform a defendant of all the details of community supervision for life. On the other hand, we do not read State v. Kovack, supra, as holding that the mere utterance of a label satisfies the court's obligation under R. 3:9-2 to determine whether "a defendant fully understands `the nature of the charge and the consequences of the plea.'" Kovack, supra, 91 N.J. at 484, 453 A.2d 521. Chapter and verse are not necessary, but the court should at least assure itself that defense counsel has discussed the matter with his client and defendant understands the nature of community supervision for life as the functional equivalent of life-time parole. If the trial court is aware that a particular aspect of a penal consequence needs clarification then it should take the time to explain further. In some instances, the community supervision can have a greater deleterious effect on the defendant than the actual period of incarceration. The current plea form contains no explanation of the phrase "Community Supervision For Life." There is no indication that such supervision is akin to parole in the nature of the possible restrictions. An expanded plea form would be appropriate. We recommend consideration of this matter by the appropriate Supreme Court committee.
The order denying defendant's petition for post-conviction relief is vacated and the matter is remanded for proceedings consistent with this opinion.
NOTES
[1] Judge Coleman did not participate in oral argument. However, the parties consented to his participation in the decision.
[2] The judge being referenced took defendant's plea and sentenced him. At the time of defendant's post-conviction relief petition that judge was no longer on the bench.
[3] Defendant also contends on appeal that there was an inadequate factual basis for his plea and that the plea was coerced. Those issues were presented to the trial court and rejected. The judge found those issues could have and should have been raised on direct appeal. R. 3:22-3. We agree with that determination and affirm that portion of the order now on appeal.
[4] N.J.A.C. 10A:71-6.11(b)7 states the offender shall "[o]btain the permission of the assigned parole officer prior to leaving the state of the approved residence for any purpose."