839 A.2d 888 (2003)
365 N.J. Super. 430
STATE of New Jersey, Plaintiff-Respondent,
v.
Charles BOND, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued November 18, 2003.
Decided December 17, 2003.
*890 Cecelia Urban, Assistant Deputy Public Defender, argued the cause for appellant (Yvonne Smith Segars, Public Defender, attorney; Ms. Urban, of counsel and on the brief).
Carol M. Henderson, Assistant Attorney General, argued the cause for respondent (Peter C. Harvey, Attorney General, attorney; Ms. Henderson, of counsel and on the brief).
Before Judges PRESSLER, ALLEY and PARKER.
*889 The opinion of the court was delivered by ALLEY, J.A.D.
Defendant Charles Bond was charged with second-degree sexual assault, N.J.S.A. 2C:14-2b, and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4a, on August 29, 1997. He pled guilty on June 15, 1998, to sexually assaulting a nine-year-old girl and was sentenced the following day to the Adult Diagnostic and Treatment Center ("ADTC") for a term of five years. In addition to the custodial term, defendant was subject to the requirements of Megan's Law, N.J.S.A. 2C:7-1 to -11, and he was accordingly sentenced to community supervision for life ("CSL"). We affirmed defendant's conviction and sentence for second-degree sexual assault. State v. Bond, A-6965-98T4 (March 6, 2001).
In conjunction with his impending parole from imprisonment on that sentence, defendant signed a document on May 1, 2000, setting forth the conditions for CSL, as was required for his release on parole. The document stated:
I understand that pursuant to N.J.S.A. 2C:43-6.4 my sentence includes a special sentence of community supervision for life. I understand that during the service of the special sentence of community supervision for life I shall be under the supervision of the Bureau of Parole of the Department of Corrections and shall be subject to the following general conditions as established by the State Parole Board.
Among these conditions, he was required "to obey all laws" and to "refrain from the purchase, use, possession, distribution or administration of any narcotic or controlled dangerous substance ... or any paraphernalia related to such substances except as prescribed by a physician" and "submit to drug or alcohol testing at any time as directed by the assigned parole officer." The form further stated, "I understand that I will be under the supervision of the Bureau of Parole of the Department of Corrections until I am released from community supervision by the Superior Court." By his signature, defendant acknowledged "that a violation of a condition specified above without good cause constitutes a crime of the fourth degree."
Six and one-half months after being paroled on May 1, 2000, defendant was indicted on November 16, 2000, on charges of committing the fourth-degree offenses of failure to register as a convicted sex offender, N.J.S.A. 2C:7-2a, and violating the conditions of CSL, N.J.S.A. 2C:43-6.4, under indictment No. 00-11-1941. Defendant pled guilty to the charge of violating the conditions of CSL on December 14, 2000, and on January 26, 2001, defendant *891 was sentenced to a three-year term of probation which included the following conditions: (1) 193 days in county jail (time served), (2) compliance with the conditions of Megan's Law, including CSL, and (3) maintenance of full-time employment.
Defendant tested positive for the use of cocaine on March 7, 2001, and on May 25 he was charged with fourth-degree violation of CSL for such use, N.J.S.A. 2C:43-6.4, under indictment No. 01-05-0954. Defendant moved to dismiss that indictment, asserting that N.J.S.A. 2C:43-6.4 was unconstitutionally vague and overbroad and was a violation of the separation of powers doctrine. After arguments on the motion to dismiss, defendant pled guilty on November 9, 2001, for violating the terms of the three-year probation imposed for the charges contained in indictment No. 00-11-1941.
These violations were charged based on his having failed to report to his parole officer and tested positive for cocaine use. That same day, Judge Michael D. Farren sentenced defendant to a custodial term of eighteen months.
On April 3, 2002, Judge Farren issued a letter opinion denying defendant's motion to dismiss indictment No. 01-05-0954, finding that defendant was on notice that illegal drug use was prohibited under the conditions of CSL.
On April 8, 2002, defendant pled guilty to the fourth-degree offense of violating the conditions of CSL, as charged in indictment No. 01-05-0954. On April 11, 2002, Judge Farren sentenced defendant to a custodial term of thirteen months, concurrent to the term he was currently serving.
On April 24, 2002, defendant was released from custody on parole.
Defendant's brief contends as follows:

POINT I: THE TRIAL JUDGE SHOULD HAVE GRANTED MR. BOND'S MOTION TO DISMISS THE INDICTMENT BECAUSE N.J.S.A. 2C:43-6.4d IS UNCONSTITUTIONALLY VAGUE. (U.S. CONST., AMENDS. IV AND V; N.J. CONST. (1947) ART. I, PAR. 1).

POINT II: IN FAILING TO (1) DEFINE THE "SPECIAL SENTENCE" OF COMMUNITY SUPERVISION FOR LIFE, (2) DEFINE THE CRIME OF BREACHING ANY CONDITION OF THAT SPECIAL SENTENCE, AND (3) IDENTIFY WHICH AGENCY SHALL ADMINISTER IT, THE LEGISLATURE UNCONSTITUTIONALLY EITHER ABDICATED ITS POWER TO DEFINE CRIMES AND PUNISHMENTS, OR DELEGATED IT TO THE EXECUTIVE BRANCH WITHOUT IMPOSING NECESSARY CONSTRAINTS ON THE LATTER'S DISCRETION. (N.J. Const. (1947), Art. III, par. 1).
N.J.S.A. 2C:43-6.4 states, in relevant part:
b. The special sentence of community supervision required by this section shall commence upon completion of the sentence imposed pursuant to other applicable provisions of the Code of Criminal Justice. Persons serving a special sentence of community supervision shall be supervised as if on parole and subject to conditions appropriate to protect the public and foster rehabilitation.
....
d. A person who violates a condition of a special sentence of community supervision without good cause is guilty of a crime of the fourth degree.

[(emphasis added)].
We address first the argument that N.J.S.A. 2C:43-6.4 is unconstitutionally *892 vague because it fails to (1) adequately describe what conduct it proscribes and (2) define what comprises "good cause." Defendant also asserts that "N.J.S.A. 2C:43-6.4 is facially vague because it prohibits no specific conduct whatsoever."
In his letter opinion dated April 3, 2002, Judge Farren explained:

N.J.S.A. 2C:43-6.4 states "... Persons serving a special sentence for community supervision for life shall be supervised as if on parole." N.J.S. 30:4-127.59[1] provides inter alia that "the conditions of parole shall include ... a requirement that the parolee refrain from the use, possession or distribution of a controlled dangerous substance ... as defined in N.J.S. 2C:35-2 and N.J.S. 2C:35-11...." Therefore, the Legislature, not the Parole Board, has set the condition prohibiting the use of a controlled dangerous substance by a parolee or one under community supervision for life. The defendant received notice that he was not to use controlled dangerous substances while under community supervision for life. Based upon the foregoing, this Court finds no merit to the defendant's arguments.
Defendant argues that the court erred by relying upon N.J.S.A. 30:4-123.59 to show that CDS use was prohibited under N.J.S.A. 2C:43-6.4 because (1) "community supervisees" are not parolees, (2) N.J.S.A. 2C:43-6.4 does not state that "community supervisees" are subject to the "General Conditions of Parole" and that violations thereof constitute a fourth-degree offense, and (3) N.J.S.A. 2C:43-6.4 itself does not provide adequate notice. As we understand it, the principal thrust of defendant's contentions is a lack of notice, and therefore lack of due process, which he asserts results from a person on CSL not knowing what conduct would trigger a CSL violation.
We conclude, however, that N.J.S.A. 2C:43-6.4, when read in conjunction with the Parole Act, N.J.S.A. 30:4-123.59b, and the CSL regulations, N.J.A.C. 10A:71-6.11, provides adequate notice that use of a CDS by a person subject to CSL is prohibited. Moreover, defendant received full written notice of the conditions of CSL, one of which proscribed the use of a CDS. The three-page document that defendant signed on May 1, 2000, prior to his release on parole also indicated that he would be under "the supervision of the Bureau of Parole of the Department of Corrections...."
A statute is deemed constitutionally vague when its terms do not enable a person of common intelligence to understand whether the contemplated conduct is lawful. State v. Cameron, 100 N.J. 586, 591, 498 A.2d 1217 (1985). This determination must be made in light of the contextual background of the particular statute while being mindful of its objectives. Ibid. In order for a statute to be facially vague, it must be vague when applied under any circumstances. State v. Maldonado, 137 N.J. 536, 563, 645 A.2d 1165 (1994). The requirement that criminal statutes be clear and understandable serves two important goals: one is providing notice of illegality and the other is creating clear standards for enforcement. Id. at 562, 645 A.2d 1165. Criminal statutes are subjected to a greater degree of scrutiny for vagueness due to the potential severity of their ramifications. Ibid. While criminal statutes are more critically scrutinized for vagueness than are civil laws, "precise definition" is not required. State v. Lee, 96 N.J. 156, 166, 475 A.2d 31 (1984). In any event, *893 A criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its violation. But few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.
[State v. Saunders, 302 N.J.Super. 509, 521, 695 A.2d 722 (App.Div.), certif. denied, 151 N.J. 470, 700 A.2d 881 (1997) (quoting Boyce Motor Lines v. United States, 342 U.S. 337, 340, 72 S.Ct. 329, 330-31, 96 L.Ed. 367, 371 (1952)).]
Defendant's contention that N.J.S.A. 2C:43-6.4b is facially vague is without merit. The statute requires persons subject to CSL be treated in accordance with the laws and regulations pertaining to paroled persons. This is the only reasonable construction of the language that they "shall be supervised as if on parole...." See N.J.S.A. 2C:43-6.4b. As the trial court observed, the Parole Act, N.J.S.A. 30:4-123.59b, prohibits the use of a CDS by a person subject to its terms. It requires that each person, subject to its terms,
agree, as evidenced by his signature to abide by specific conditions of parole established by the appropriate board panel which shall be enumerated in writing in a certificate of parole and shall be given to the parolee upon release. Such conditions shall include, among other things, a requirement that the parolee conduct himself in society in compliance with all laws and refrain from committing any crime ... a requirement that the parolee refrain from the use, possession or distribution of a controlled dangerous substance, controlled substance analog or imitation controlled dangerous substance....

[N.J.S.A. 30:4-123.59b]
N.J.A.C. 10A:71-6.11, entitled "Community Supervision for Life," provided even more direct notice of illegality to defendant. This regulation, which effectuates the purposes of N.J.S.A. 2C:43-6.4b, states in relevant part:
The special sentence of community supervision for life shall commence pursuant to N.J.S.A. 2C:43-6.4(b) upon the completion of the sentence imposed pursuant to the Code of Criminal Justice, N.J.S.A. 2C:1-1 et seq. An offender serving a special sentence of community supervision for life shall be supervised by the Division of Parole as if on parole and subject to any special conditions established by the appropriate Board panel and to the following general conditions. The offender shall:
1. Obey all laws and ordinances;
....
10. Refrain from the purchase, use, possession, distribution or administration of any narcotic or controlled dangerous substance, controlled dangerous substance analog, imitation controlled dangerous substance or any paraphernalia related to such substances except as prescribed by a physician;....

*894 13. Submit to drug or alcohol testing at any time as directed by the assigned parole officer;
....
18. Permit the assigned parole officer to visit the offender at any time at home or elsewhere and permit confiscation of any contraband observed in plain view by the parole officer.
Both N.J.S.A. 30:4-123.59b and N.J.A.C. 10A:71-6.11 serve to accomplish the legislative purpose behind N.J.S.A. 2C:43-6.4b. Moreover, the CSL conditions defendant agreed to upon his release were mandated by N.J.S.A. 30:4-123.59b. Therefore, the statute provided defendant with sufficient notice of the illegality of his conduct and is not unconstitutionally vague.[2]
We next consider defendant's contentions that the Legislature failed to: (1) define the "special sentence" created by N.J.S.A. 2C:43-6.4b, (2) define the fourthdegree offense of violating conditions of CSL, and (3) delegate to any specific governmental agency the authority to promulgate the conditions of CSL, and that as a result the Parole Board, an agency of the Department of Corrections within the Executive Branch, unconstitutionally assumed rule-promulgating authority. In the alternative, defendant contends that in the event the statutes and regulation implicitly authorize the Parole Board to administer the conditions of CSL, N.J.S.A. 2C:43-6.4b is still unconstitutional because constraints on the Parole Board's discretion are lacking. He asserts that this constitutes a violation of the doctrine of separation of powers.
Defendant's first contention, primarily addressed above, is without merit. It ignores the correlation between N.J.S.A. 2C:43-6.4b and the CSL conditions set forth in N.J.A.C. 10A:71-6.11. As the State correctly contends, these conditions "mirror... the statutory and administrative regulations governing parole." Additionally, it disregards our determination that in N.J.S.A. 2C:43-6.4b the Legislature vested the Parole Board with supervisory authority over those persons subject to CSL. See State v. Williams, 342 N.J.Super. 83, 92, 775 A.2d 727 (App.Div.), certif. denied, 170 N.J. 207, 785 A.2d 435 (2001).
Finally, defendant argues that the Legislature's delegation of authority over persons subject to CSL violates the doctrine of separation of powers. This doctrine is set forth in the New Jersey Constitution, which provides:
The powers of the government shall be divided among three distinct branches, the legislative, executive, and judicial. No person or persons belonging to or constituting one branch shall exercise any of the powers properly belonging to either of the others, except as expressly provided in this Constitution.

[N.J. Const. art. III, ¶ 1.]
The purpose of the separation of powers is to create a system of checks and balances among the three branches of government. State v. Leonardis, 73 N.J. *895 360, 370, 375 A.2d 607 (1977). It is not intended, however, to create an absolute division of powers among the three branches of government, thereby preventing cooperative action among them. Ibid. Only when the challenged statute impairs the integrity among the branches should the doctrine's effect on a branch's constitutional limits be recognized. Bullet Hole, Inc. v. Dunbar, 335 N.J.Super. 562, 574, 763 A.2d 295 (App.Div.2000). We have observed that "[t]he separation of powers prevents any one branch from aggregating unchecked power, which might lead to oppression and despotism." Ibid.
Here, defendant argues that the Parole Board's promulgation of CSL conditions as set forth in N.J.A.C. 10A:71-6.11 violates the separation of powers doctrine. Administrative regulations are presumed to be valid. N.J. State League of Municipalities v. Dept. of Community Affairs, 158 N.J. 211, 222, 729 A.2d 21 (1999). The party challenging the validity of administrative regulations bears the burden of demonstrating that they are either arbitrary, capricious, unreasonable, or exceed the agency's delegated authority. In re Amendment of N.J.A.C. 8:31B-3.31, 119 N.J. 531, 543-44, 575 A.2d 481 (1990). The Supreme Court has recognized that a grant of decision-making authority to an agency should be liberally construed in order for the agency to accomplish its statutory mandate and, therefore, "courts should readily imply such incidental powers as are necessary to effectuate fully the legislative intent." League of Municipalities, supra, 158 N.J. at 223, 729 A.2d 21 (quoting N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562, 384 A.2d 795 (1978)). Accordingly, the determination of an administrative agency is accorded substantial deference and the courts will "act only in those rare circumstances when it is clear that the agency action is inconsistent with its legislative mandate." Williams v. Dept. of Human Services, 116 N.J. 102, 108, 561 A.2d 244 (1989).
Defendant has failed to show that that N.J.A.C. 10A:71-6.11 constitutes an unacceptable incursion on the separation of powers. The Legislature granted authority to the Parole Board to supervise persons subject to CSL in N.J.S.A. 2C:43-6.4b. Williams, supra, 342 N.J.Super. at 92, 775 A.2d 727. Courts should "look beyond the specific terms of the enabling act to the statutory policy sought to be achieved by examining the entire statute in light of its surroundings and objectives." A.A. Mastrangelo, Inc. v. Commissioner of Dept. of Envtl. Protection, 90 N.J. 666, 683, 449 A.2d 516 (1982). Here, the Legislature's use of the language "shall be supervised as if on parole" can be reasonably viewed as enabling the executive branch to promulgate rules and regulations to further this purpose. Moreover, we should take into consideration the executive's "specialized expertise" in these matters. See League of Municipalities, supra, 158 N.J. at 222, 729 A.2d 21.
Defendant's assertion that N.J.S.A. 2C:43-6.4b fails to set forth an "intelligible principle" is wide of the mark, as is his reliance upon this Court's observation in Williams that persons subject to CSL are "not actually on parole." As the Supreme Court pointed out in Cammarata v. Essex County Park Commission, 26 N.J. 404, 410, 140 A.2d 397 (1958), "[i]t is settled beyond controversy that the Legislature may enact statutes setting forth in broad design its intended aims, leaving the detailed implementation of the policy thus expressed to an administrative agency." Here, the Legislature's intent to create a *896 policy whereby CSL would mirror the conditions of parole is clear, and N.J.S.A. 2C:43-6.4b plainly comports with the principle expressed in Cammarata.
We do not determine in a factual vacuum whether a violation of the separation of powers doctrine has occurred, but instead must consider the accompanying "surroundings and objectives." A.A. Mastrangelo, supra, 90 N.J. at 683, 449 A.2d 516; New Jersey Guild, supra, 75 N.J. at 562, 384 A.2d 795. The Legislature necessarily was fully aware of the Parole Board's supervisory scheme when it delegated authority to the Board to set forth the conditions of CSL. It follows then that defendant's argument that N.J.S.A. 2C:43-6.4b failed to provide the proper guidelines is unpersuasive. In our view, a reasonable interpretation of the legislative purpose behind the statute is that the Legislature took notice of a pre-existing supervisory scheme. In this context, as the State contends, the CSL conditions set forth in N.J.A.C. 10A:71-6.11 are consistent with the general parole conditions found in N.J.S.A. 30:4-123.59 and N.J.A.C. 10A:71-6.4. In short, N.J.S.A. 2C:43-6.4b does not constitute a violation of the separation of powers doctrine and defendant's contentions to that effect are without merit.
Affirmed.
NOTES
[1] It appears the court was referring to N.J.S.A. 30:4-123.59.
[2] The decision whether to quash a grand jury indictment is reserved to the sound discretion of the trial court. State v. McCrary, 97 N.J. 132, 144, 478 A.2d 339 (1984). It will be reversed only if a clear abuse of discretion has occurred. State v. Warmbrun, 277 N.J.Super. 51, 59, 648 A.2d 1153 (App.Div.1994), certif. denied, 140 N.J. 277, 658 A.2d 300 (1995). The trial court's authority to dismiss should only be exercised on the clearest and plainest of grounds, and thus an indictment should stand unless it is manifestly deficient or palpably defective. State v. Hogan, 144 N.J. 216, 228-29, 676 A.2d 533 (1996). We conclude that defendant has failed to show that the trial court abused its discretion in allowing defendant's indictment to stand.