# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### January 27, 2010 Session

## STATE OF TENNESSEE v. DAVID NAGELE

**Appeal from the Criminal Court for Knox County**
**No. 75138     Bob R. McGee, Judge**

---

**No. E2009-01313-CCA-R3-CD - Filed May 24, 2010**

---

The Defendant, David Nagele, appeals from the Knox County Criminal Court's denial of his motion to withdraw his plea to attempted aggravated sexual battery, a Class C felony, following correction of the judgment to reflect that the Defendant was subject to community supervision for life. We hold (1) that the trial court did not err in denying the motion and (2) that the Defendant is not entitled to plain error relief in his challenge to the constitutionality of the community supervision for life statute. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Joshua D. Hedrick, Knoxville, Tennessee, for the appellant, David Nagele.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Charme Prater Knight, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Defendant was charged with aggravated sexual battery occurring between September 1999 and September 2001. He pled guilty to the lesser included offense of attempted aggravated sexual battery on November 13, 2002, and the judgment was filed on February 12, 2003. The judgment reflected a sentence of six years' probation, expiring on February 21, 2009. The judgment recited various conditions, but community supervision for life was not among them. On February 19, 2009, the State filed a motion requesting that the judgment be amended to include a condition of community supervision for life as required by law. See T.C.A. § 39-13-524 (2006). The Defendant filed a motion to withdraw his

guilty plea on March 26, 2009. Also on March 26, 2009, the court filed an amended judgment which included community supervision for life.

On June 12, 2009, the trial court conducted a hearing on the Defendant's motion to set aside the guilty plea. At the hearing, the Defendant testified that he agreed to plead guilty to a lesser included offense of the charged offense with the understanding that his sentence would consist of six years of enhanced probation, court costs, fines, registering as a sex offender, and treatment classes. He said that his attorney did not mention anything about community supervision for life. He said that at the plea hearing, the district attorney never mentioned community supervision for life. He said that neither the individual who provided his treatment nor his probation officer mentioned community supervision for life, although he acknowledged that he and his probation officer discussed it after the State filed the motion to amend the judgment. He said that he would not have pled guilty if he had been told that he would be subject to community supervision for life.

On cross-examination, the Defendant acknowledged that he discussed his sentence with his attorney after the judgment was filed. He said counsel told him that he would be able to have his name removed from the sex offender registry after ten years. He denied that counsel told him at this point about community supervision for life. He denied that he and his attorney ever discussed the fact that community supervision for life had not been specified and the possibility that this might not be noticed and would "slide through."

Trial counsel testified that he and the Defendant had numerous discussions about the case. He said they never discussed community supervision for life "until the very end" of plea agreement talks. He said he remembered the Defendant's case because it was the first time he had dealt with a case involving the community supervision for life statute. He said that lifetime supervision was never mentioned as part of the plea negotiations with the State but that he did talk with the Defendant about it. He said he discussed with the Defendant his concern that it would be part of the judgment. He said the specific guidelines for the program had not been written at the time, and he was not able to give the Defendant that type of information. He said that because it had not been mentioned in the plea negotiations, he and the Defendant hoped that the provision would not be included in the judgment. He said that at the plea hearing, neither the district attorney nor the judge mentioned community supervision for life. He said that the judgment was later filed and that it did not have the box checked for community supervision for life. He said that after the judgment was filed, he and the Defendant discussed that the box was not checked. He said they made the decision that they would do nothing because it was not the defense's job to correct the judgment.

Trial counsel testified that after the Defendant pled guilty but before the judgment was imposed, the Defendant was required to undergo a psychosexual evaluation. He said that

they were concerned that this process was going to reveal information that might lead to additional charges in Tennessee and Michigan. He said, "We were quite interested in getting quietly out of this situation. And the threat of the other charges was also weighing on us while we were trying to be quiet about the threat of community supervision." He said he thought the Defendant knew that community supervision for life was a possibility and that he was hoping it would not happen.

The trial court denied the Defendant's motion to withdraw his plea. The court found that the Defendant was advised before he entered his plea about community supervision for life. The court also found that community supervision for life "wouldn't have been something that [was] clearly explained to him because nobody knew at that time what it was going to be."

# I

In his first issue, the Defendant argues that the trial court erred in denying his motion to withdraw his guilty plea. He contends alternatively that the plea was not knowing and voluntary because he was given erroneous advice by counsel or because he was not advised by the trial court of a direct consequence of his plea. The State responds that the trial court did not abuse its discretion in denying the motion. We agree with the State.

Tennessee Rule of Criminal Procedure 32(f) permits a defendant to withdraw a guilty plea under certain circumstances. If a sentence has yet to be imposed, the trial court may grant a motion to withdraw "for any fair and just reason." Tenn. R. Crim. P. 32(f)(1). After sentence is imposed, but before the judgment becomes final, the trial court may set aside the judgment and allow a defendant to withdraw his guilty plea only to correct manifest injustice. Tenn. R. Crim. P. 32(f)(2). The decision whether to allow the defendant to withdraw the plea is within the discretion of the trial court, and its decision will not be reversed absent an abuse of discretion. State v. Crowe, 168 S.W.3d 731, 740 (Tenn. 2005).

In contrast to his testimony in the trial court that counsel never mentioned the requirement of community supervision for life, the Defendant contends on appeal that he was given erroneous advice about the requirement. He says that counsel's inability to advise him of the specifics of the program constituted the "erroneous" advice.

The Defendant analogizes his case to Chad Alan Parker v. State, No. M2007-02799-CCA-R3-PC, Rutherford County (Tenn. Crim. App. July 31, 2008). In that case, the petitioner's trial counsel advised him of the requirement of community supervision for life but not of all the specific requirements. Trial counsel later realized that the law imposed greater requirements than what he had told the petitioner. Counsel testified at the petitioner's

post-conviction hearing that there was a "significant difference" between the law as it existed and as he represented it to the petitioner. Counsel also testified that the judge advised the petitioner that he would be subject to community supervision for life and that the petitioner responded negatively when the judge asked if he had any questions. The petitioner testified that counsel advised him that the requirements of community supervision for life were the same as those of the sex offender registry. A majority of a panel of this court held that the petitioner was entitled to post-conviction relief on the basis of ineffective assistance of counsel because the petitioner had been significantly misinformed about the consequences of his plea and as a result, his plea was not made knowingly and voluntarily. Chad Alan Parker, slip op. at 9. The dissenting judge disagreed that counsel had provided deficient performance, stating that the requirement of community supervision for life was a collateral consequence of the plea and that any failure to fully and accurately explain it did not constitute ineffective assistance of counsel. Chad Alan Parker, slip op. (Thomas, J., dissenting). The dissenting judge also disagreed that the plea was involuntary. He noted that the supreme court said in Jaco v. State, 120 S.W.3d 828 (Tenn. 2003), that a sex offender defendant's plea will not be considered constitutionally deficient merely because he was not advised about specific prerequisites with which a sex offender must comply before he may be released on parole. He analogized advice about the specifics of community supervision for life to advice about sex offender parole prerequisites. Chad Alan Parker, slip op. (Thomas, J., dissenting).

The Defendant distinguishes his case from Marcus Ward v. State, No. W2007-01632-CCA-R3-PC, Shelby County (Tenn. Crim. App. Jan. 14, 2009) (Tipton, P.J., dissenting), app. granted (Tenn. Apr. 27, 2009). In that case, the post-conviction petitioner alleged that he was not advised by his trial counsel before he pled guilty that he would be subject to community supervision for life. A majority of a panel of this court held in pertinent part that a requirement of community supervision for life is a collateral, not direct consequence of a guilty plea. The majority distinguished the complete lack of advice in the case at bar from the erroneous advice in Chad Alan Parker. Citing the dissenting opinion in Chad Alan Parker, the majority held that community supervision for life was a collateral consequence of a guilty plea and that a plea without advice of the requirement did not render a conviction constitutionally infirm. Marcus Ward, slip op. at 12. The author of the present opinion dissented from the majority opinion that community supervision for life was not a direct punitive consequence of a guilty plea to a sex offense. Id., slip op. (Tipton, P.J., dissenting).

In the present case, the Defendant was neither given erroneous advice about community supervision for life, as in Chad Alan Parker, nor was he given no advice, as in Marcus Ward. The Defendant was advised that community supervision for life was legally required to be part of his sentence but that the possibility existed it would be omitted from the judgment because it was not discussed in the plea negotiations or listed in the judgment.

Counsel said he advised the Defendant that he could not tell the Defendant all of the specifics of the program because it had only recently been created, but there is no evidence counsel gave the Defendant any incorrect advice. The Defendant accepted the plea agreement hoping that he would not be subject to community supervision for life but aware that it was required for the offense to which he was pleading and aware that due to the program's recent creation, there were uncertainties about the specifics of the program. After the judgment was filed, he and trial counsel discussed that the requirement had been omitted from the judgment, and they decided not to bring it to anyone's attention. Because the Defendant was advised by counsel about community supervision for life and made an intelligent choice to plead guilty despite the fact the program might be imposed on him as part of the sentence, his plea was knowing and voluntary. The Defendant did not show manifest injustice, and the trial court did not abuse its discretion in denying the motion on this basis.

Alternatively, the Defendant argues that community supervision for life is a direct consequence of a guilty plea and that he must have been advised of it by the trial court in order to have entered a knowing and voluntary plea. He acknowledges this court's decision in Marcus Ward, and the majority opinion's holding that community supervision for life is a collateral, not direct, consequence of a plea.

In the present case, the panel is divided on the issue whether community supervision for life is a direct or collateral consequence of a sex offender's guilty plea. The author of this opinion was the dissenting judge in Marcus Ward. See Marcus Ward, slip op. (Tipton, P.J., dissenting). Judges Tipton and Ogle adhere to the view expressed in the Marcus Ward dissent. That is, by virtue of Code section 39-13-524, which provides for "a sentence of community supervision for life," the lifelong community supervision program is a direct punitive consequence of a sex offender's guilty plea. Marcus Ward, slip op. (Tipton, P.J., dissenting); cf. State v. Jamgochian, 832 A.2d 360, 362 (N.J. Super. App. Div. 2003); Palmer v. State, 59 P.3d 1192, 1196-97 (Nev. 2002). Judge Thomas, the dissenting judge in Chad Alan Parker, would hold that community supervision for life is a collateral consequence of a sex offender's guilty plea. See Chad Alan Parker, slip op. (Thomas, J., dissenting).

In any event, all of the members of this panel agree that the Defendant is not entitled to relief. The Defendant was not prejudiced by the trial court's failure to advise him of the program because his attorney did so. See, e.g., Johnson v. State, 834 S.W.2d 922 (Tenn. 1992) (holding that petitioner's plea was knowing and voluntary despite trial court's failure to advise him of his right against self-incrimination, where State established that the petitioner was otherwise aware of the right when he entered into plea). "It is the result, not the process, that is essential to a valid plea. The critical fact is the defendant's knowledge of certain rights, not that the trial judge was the source of that knowledge." Id. at 924.

-5-

## II

The Defendant also argues that the community supervision for life statute is unconstitutional because it delegates legislative authority to an administrative agency by directing that the Board of Probation and Parole has the authority to establish a program and promulgate rules for supervision of sex offenders subject to the statute. The State responds that the Defendant has waived this issue by failing to raise it in the trial court. The Defendant contends that the issue was raised when trial counsel questioned the constitutionality of the program in his testimony at the hearing, and even if it was not properly raised in the trial court, this court should consider it as a matter of plain error.

In support of the Defendant's argument that the question of the constitutionality of the community supervision for life statute was raised in the trial court, he cites to portions of the transcripts in which the Defendant's trial attorney, testifying as a witness, stated that he questioned the constitutionality of the supervision for life law. The issue was never raised by the State or by the attorney who represented the Defendant in the motion to withdraw, and the trial court did not rule on the issue. The issue was not raised in the trial court.

The Defendant contends alternatively that we should consider the matter as an issue of plain error. See State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000) (holding that all five plain error factors must be established before a court can find plain error exists and that "complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established"). The Defendant's belated assertion falls short of establishing that a clear and unequivocal rule of law has been breached or that a substantial right of the Defendant's was adversely affected. See id. Further, review of this issue is not necessary to do substantial justice. See id. A challenge to a constitutional provision that does not contain a patent flaw is better suited for full litigation and thoughtful consideration by the trial court, with appellate review of the trial court's decision. See Lawrence v. Stanford, 655 S.W.2d 927, 929 (Tenn. 1983). An appeal of a motion to withdraw a guilty plea when there was no allegation or proof in the trial court that the Defendant sought to withdraw his plea because the statute was unconstitutional is an inappropriate vehicle for litigation of this claim. Plain error relief is not warranted.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE