# **RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2901-16T3

C.D.R.,

     Appellant,

v.

NEW JERSEY STATE PAROLE
BOARD,

     Respondent.

_____

Argued October 3, 2018 – Decided January 14, 2019

Before Judges Koblitz, Ostrer and Mayer.

On appeal from the New Jersey State Parole Board.

Stefan J. Erwin, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Stefan J. Erwin, of counsel and on the briefs).

Christopher C. Josephson, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Christopher C. Josephson, on the brief).

PER CURIAM

C.D.R., who was sentenced to Community Supervision for Life (CSL) after pleading guilty in 1998 to sexual acts with his seven-year-old daughter, appeals from the State Parole Board's (Board) final decision to affirm a special condition of his supervision. The special condition requires C.D.R. to notify his current or prospective employer of his crime and CSL status. It is based on evidence that C.D.R. has violated a parole condition repeatedly. On appeal, C.D.R. argues the Megan's Law tier system preempts the Board from mandating notification that was not already required under his tier. C.D.R. also argues the Board's decision was arbitrary because there was no evidence C.D.R. was at risk of reoffending. We affirm.

I.

C.D.R.'s daughter disclosed in 1996 that while staying at a hotel with her father in 1994, when she was seven years old, he had touched and licked her genitals and put her mouth on his own genitals while he was intoxicated. C.D.R. later pleaded guilty to third-degree endangering the welfare of a child, although he had denied his guilt after his arrest and throughout the pendency of his case. He was sentenced to five years of probation. He was later designated a Tier I

A-2901-16T3

offender under N.J.S.A. 2C:7-8(c)(1), requiring he register as a sex offender and notify "law enforcement agencies likely to encounter" him.

Pursuant to the law at the time, C.D.R. was also sentenced to CSL. Among other restrictions, CSL forbids C.D.R. from living in the same home as a minor, absent a District Parole Supervisor's approval. N.J.A.C. 10A:71-6.11(c)(3). It also requires that he "obtain permission of his assigned parole officer prior to securing, accepting or engaging in any employment or business activity and prior to a change in employment." N.J.A.C. 10:71-6.11(b)(16). Besides the statutory restrictions on liberty for CSL parolees, the Board may impose additional "special conditions" to deter the parolee from repeating the initial offense. N.J.S.A. 30:4-123.59(b)(1). For most of the duration of his CSL, C.D.R. has been employed, often by home improvement companies, although he has also worked in commercial or manufacturing workplaces.

After eleven years of CSL, C.D.R. wished to move in with his girlfriend, her children, and their infant daughter. He engaged a psychologist to evaluate his risk of reoffending in the hope of obtaining permission to reside in the same house as a minor. The psychologist, who did not ask for the Division of Parole's input for his evaluation, concluded C.D.R. was unlikely to commit another sex offense. The Division of Parole, however, denied C.D.R. permission to reside

with the children, explaining "the evaluation was based solely on self-reports by [C.D.R.] and his girlfriend." However, on January 20, 2015, a court ordered that C.D.R. be permitted to live with his girlfriend and the children.[1]

A year later, in August 2016, C.D.R. told his parole officer that he had been working for three days as a house painter for a painting company, which he identified; he was an "independent contractor"; and he used Craigslist.org to find work. His parole officer reminded C.D.R. that he needed the parole officer's permission before accepting a new job, and that C.D.R. could not work as an independent contractor because he lacked the requisite license.

Following this interaction, the Division of Parole reviewed C.D.R.'s employment history, which it concluded demonstrated a need for heightened monitoring of C.D.R.'s work. C.D.R. was instructed orally to inform his employer or would-be employer of his crime and his CSL status; if C.D.R. did not, his parole officer would be authorized to do so.

C.D.R.'s attorney wrote to the Board in September 2016, objecting to the new condition. Two days later, the Board sent C.D.R. a "Notice of Imposition of Special Condition" verifying the new employer-notification condition. It noted that C.D.R.'s offense involved sexual conduct with a child, and his current

---

[1] The parties have not included the court order in the appellate record.

employment required him to enter private homes. The special condition, the Board explained, "would aid [C.D.R.'s] employer in providing a safe environment while helping [him] avoid any high risk situations," and it would "provide a safeguard for the community while aiding [him] in remaining in compliance with the conditions of [his] supervision."

C.D.R. requested a stay of the special condition pending the Board's final decision. He certified that his current employment did not place him near children and that he always works with several other employees. He also stated he had often worked as a house painter between 2001 and 2010, and during 2014 and 2015, without incident. C.D.R. said he would lose his current job if his boss learned of C.D.R.'s criminal history. The Board denied the stay.

A panel of the Board affirmed the special condition. The panel explained that its investigation had revealed that C.D.R. had been, in fact, unsupervised for periods of time while on CSL. He had lived in Florida during 2009 without registering as a sex offender; he was arrested in 2010 and served over two years in a Florida prison. He had also participated in the Stages to Enhance Parolee Success (STEPS) program for less than three months in 2013, and had served ten days in a county jail later in 2013.

The panel also noted C.D.R. had changed jobs frequently while under supervision, and that some of the jobs he reported were unverified. It stated C.D.R. had "always been mandated to ensure that while working as a house painter he cannot be alone and he must be with co-workers"; and the same requirement "continues to appear to be necessary." C.D.R. appealed the panel's decision.

The same day, C.D.R. informed his parole officer that he had left the painting company he initially disclosed, and accepted a job with another one. His parole officer again reminded him that he could not accept new employment without the parole officer's permission. When C.D.R. could not demonstrate to his parole officer's satisfaction that the new painting firm was licensed by the New Jersey Department of Consumer Affairs, he quit his job with the company.

Two weeks later, he reported accepting a new job as a forklift operator. However, the next month, C.D.R. informed his parole officer he was no longer employed as a forklift operator; he had resumed working for the first painting company, as a house painter. His parole officer again reminded him he must obtain permission before accepting new employment, and C.D.R. was ordered to inform his employer of his criminal record and CSL status. When his parole

officer contacted the firm's owner two weeks later to confirm C.D.R. had notified him, the owner denied having an employee by C.D.R.'s name.

In December 2016, the Board affirmed the special condition, reiterating its concerns based on C.D.R.'s offense and his need to enter private homes to work as a house painter. The Board further noted C.D.R. had "misrepresented his employment . . . on multiple occasions, which generates concerns as to whether he has been completely forthcoming regarding his employment."

This appeal followed.

## II.

The Parole Board's decisions will be upheld unless arbitrary or capricious. Trantino v. New Jersey State Parole Bd., 166 N.J. 113, 173 (2001). As with all agency decisions, this court's review has three prongs:

> (1) whether the [Board]'s action violates express or implied legislative policies, i.e., did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Trantino v. N.J. State Parole Bd. (Trantino IV), 154 N.J. 19, 24 (1998) (citing Brady v. Dep't of Personnel, 149 N.J. 244, 256 (1997)).]

A-2901-16T3

The appellant bears "[t]he burden of showing the agency's action was arbitrary, unreasonable or capricious." Bowden v. Bayside State Prison, 268 N.J. Super. 301, 304 (App. Div. 1993).

The first prong, whether the Board "followed the law," asks if the Board "applied the correct legal standard" – one that effectuates the legislative policies behind the statute – and complied with required procedure. Trantino IV, 154 N.J. at 24; see also ibid. (quoting Beckworth v. State Parole Bd., 62 N.J. 348, 368 (1973) (Sullivan, J., concurring) ("observing that 'judicial review of Parole Board matters is limited to a consideration of whether guidelines and principles have been substantially satisfied'")).

The policies CSL is meant to effectuate are "reducing the likelihood of recidivism and fostering public protection and rehabilitation." J.I. v. N.J. State Parole Bd., 228 N.J. 204, 221 (2017). The Board has broad authority to impose conditions so long as the conditions are "deemed reasonable in order to reduce the likelihood of recurrence of criminal or delinquent behavior." N.J.S.A. 30:4-123.59(b)(1).

As for factual findings, the court may not "substitute [its] judgment for that of the agency." Bowden, 268 N.J. Super. at 304. An appellant must show that the Board's conclusion was not reasonably based on "sufficient credible

evidence in the whole record." Trantino IV, 154 N.J. at 24 (quoting N.J. State Parole Bd. v. Cestari, 224 N.J. Super. 534, 547 (App. Div. 1988)).

A court will reverse only if it has "a definite conviction" that the Board's decision "went so far wide of the mark that a mistake must have been made." Clowes v. Terminix Intern., Inc., 109 N.J. 575, 589 (1988) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)).

## A.

C.D.R. argues that the Megan's Law registry and notice requirements preclude the Board from requiring he notify his employer of his crime and CSL status. We disagree.

The statute authorizes the Board to impose a special condition on a CSL offender "appropriate to protect the public and foster rehabilitation." J.I., 228 N.J. at 222 (quoting N.J.S.A. 2C:43-6.4(b) (1994)). Apart from this broad discretion, the Board's regulations expressly authorize it to require a parolee to notify his employer about his criminal history and parole status. See N.J.A.C. 10A:71-6.4(f)-(h).

Although this regulation governs parolees in general, it applies to CSL offenders as well, who are subject to the same regulations governing all parolees. N.J.A.C. 10A:71-6.11(b) (stating that a CSL parolee "shall be

supervised by the Division of Parole as if on parole and subject to any special conditions established by the appropriate Board panel"); State v. Bond, 365 N.J. Super. 430, 438-39 (App. Div. 2003) (explaining "the only reasonable construction of the language that they 'shall be supervised as if on parole'" is to treat CSL parolees according to "the laws and regulations pertaining to paroled persons").

Further, this administrative regulation does not exceed the Board's statutory authority. C.D.R. has presented no legislative history to indicate that the Legislature intended the registry and notice laws to preempt the Board's ability to require notification of other private individuals.

We will infer a legislative intent to preempt regulation where a statute creates a comprehensive regime governing an area of law. G.H. v. Township of Galloway, 401 N.J. Super. 392, 400-01, 414 (App. Div. 2008), aff'd o.b., 199 N.J. 135 (2009). Registry and notice under Megan's Law comprise a uniform civil regulatory system aimed at alerting law enforcement or the public – depending on the offender's risk level – to the offender's presence. N.J.S.A. 2C:7-1(a). In contrast, a parole condition of employer notification, like other CSL conditions, is a deterrent, tailored to a specific offender's risk of

reoffending; its purpose is not only to protect the public but to reduce recidivism and rehabilitate the offender.  See J.I., 228 N.J. at 221.

In Galloway, we recognized the complementary functions of registry and notice on the one hand, and Board-imposed special conditions on the other.  We held there that Megan's Law preempted municipalities from imposing additional strictures on convicted sex offenders beyond the statute's requirements.  401 N.J. Super. at 399-400.  We noted the Legislature intended Megan's Law to establish a "comprehensive system" governing sex offenders who have served their sentences, and that comprehensive system was incompatible with an additional layer of municipal regulation of Megan's Law offenders.  Id. at 399-400, 413.

In contrast to municipal activity in the field, Board supervision of CSL parolees is not a supplement to Megan's Law; it is part of it.  Megan's Law imposes "sweeping restrictions on the lives of" convicted sex offenders by limiting their rights, such as their right to leave the state and own a firearm, and against warrantless searches and curfews.  Id. at 404 (citing N.J.A.C. 10A:71-6.11, -6.12).  We specifically noted, as a component of this "comprehensive system," that "parole officers are empowered to impose additional 'special conditions' deemed appropriate to reduce the likelihood of recurrence of the [offenders'] criminal behavior."  Id. at 404-05 (citing N.J.A.C. 10A:71-6.11).

11

In sum, the whole of Megan's Law, including the Board's authority to impose special conditions on supervisees, creates a comprehensive regime for regulating post-incarceration sex offenders. The registry and notice provisions complement, rather than preempt, the Board's special conditions.

B.

C.D.R. also contends that requiring him to notify current and potential employers is arbitrary and capricious. We are unpersuaded.

A special condition on a CSL offender "must bear a reasonable relationship to reducing the likelihood of recidivism and fostering public protection and rehabilitation." J.I., 228 N.J. at 221. A special condition is unreasonable if is it "not tied to criminal conduct, rehabilitation or public safety." Id. at 230.

The Board's appraisal of the risk of reoffending must rely on more than the gravity of the original offense. See id. at 230. Rather, the factual basis of a special condition should include the original offense, the offender's likelihood of reoffending, other public safety risks unique to the offender, and the offender's past behavior and compliance with parole conditions. See ibid.

Here, the Board asserts the employer notice condition is reasonable based on the following findings: (a) C.D.R.'s commitment offense "involv[ed]

numerous instances and various types of sexual contact with" his seven-year-old daughter; (b) C.D.R.'s work in house painting and home improvement could place him in homes with unsupervised minors; (c) C.D.R. failed, several times, to obtain his parole officer's permission before accepting new employment; and (d) C.D.R. had apparently lied that he was employed by the painting company he identified.

These facts provide a reasonable basis for the employer-notification condition, as they demonstrate C.D.R.'s unreliability and a heightened risk of reoffending. Notifying an employer will facilitate communication between his employer and his parole officer, who can closely monitor C.D.R.'s conduct at work – a potentially high-risk situation when in the vicinity of children. While C.D.R. has not committed an offense involving minors since his conviction, his inconsistent compliance with the requirements of supervision undermines both his trustworthiness and understanding of his crime.

Further, the fact that C.D.R. was originally designated a low-risk offender for Megan's Law purposes after he was convicted does not settle the issue; the Board must reconsider his current risk status based on his parole history. Nor does the long stretch between the start of C.D.R.'s CSL status and the Board's decision render the decision arbitrary. Though C.D.R. has worked for home

improvement companies since his parole began, the Board only recently learned that he failed to inform his parole officer multiple times about changing employment.

Under our deferential standard of review, we cannot conclude that the Board's decision "went so far wide of the mark that a mistake must have been made." Clowes, 109 N.J. at 589.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2901-16T3