**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3661-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JAMAL SPEIGHTS,

     Defendant-Appellant.

_____

Submitted May 5, 2021 – Decided June 11, 2021

Before Judges Whipple and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 14-01-0046.

Joseph E. Krakora, Public Defender, attorney for appellant (Frank M. Gennaro, Designated Counsel, on the brief).

Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney for respondent (Albert Cernadas, Jr., Special Deputy Attorney General/Acting Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Jamal Speights appeals Judge Regina Caulfield's February 21, 2020 denial of his petition for post-conviction relief (PCR) following an evidentiary hearing on the limited issue of whether his defense counsel was ineffective for failing to apprise defendant of the consequences of waiving his right to testify at trial. The judge also denied defendant's PCR petition asserting other claims of ineffective assistance of trial and appellate counsel on November 8, 2019, without conducting an evidentiary hearing. We affirm.

I.

In January 2014, defendant was charged with two counts of second-degree robbery, N.J.S.A. 2C:15-1 (counts one and two); and fourth-degree possession of a prescription legend drug without a prescription, N.J.S.A. 2C:35-10.5(e)(2) (count three). He was tried before a jury and convicted on one count of second-degree robbery and acquitted on the fourth-degree unlawful possession of prescription medication. On March 6, 2015, defendant was sentenced to eight years' imprisonment subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. We affirmed defendant's conviction and sentence on direct appeal, State v. Jamal Speights, No. A-4328-14 (App. Div. Jan. 30, 2018), and the Supreme Court denied his petition for certification, 234 N.J. 12 (2018).

The details underlying the conviction are set forth in our prior opinion and need not be repeated here. See State v. Jamal Speights, No. A-4328-14 (slip op. at 2-6). Pertinent to this appeal, the record shows that on July 27, 2013, at 1:30 a.m., Plainfield police officers Hans Noriega and Charles Martina were on patrol in a marked car on Park Avenue heading toward Seventh Street. Officer Noriega saw a man "on his knees . . . getting assaulted by [a man] . . . throwing punches downward." The officer also observed defendant "going into the victim's pockets," and "yelled out of [his police car] window, 'stop police.'" Noriega later identified the perpetrator as defendant. Before defendant started to run from the scene, Noriega saw defendant "drop[] what appeared to be a pill bottle" that was an "orange bottle with [a] white cap."

Noriega and Martina pursued defendant in their patrol car until reaching him. When Noriega stepped out to apprehend defendant, he again fled. Noriega chased defendant on foot while calling for him to stop. Ultimately, the pursuit ended when defendant reached a dumpster. Noriega told defendant to show his hands because the officer observed defendant holding an object. After throwing "a couple of punches" towards defendant to gain compliance, and handcuffing him, Noriega observed a black, foldable wallet that had a sticker of the Virgin of Guadalupe, two $100 bills, three $20 bills, a $5 bill, and "maybe a couple of

singles," drop out of defendant's hand. As a result of a search incident to the arrest, Noriega also uncovered a "black flip phone."

The police transported the victim to the police station. Noriega interviewed the victim, who described the incident as a robbery, and detailed the contents of his wallet, including the religious sticker. At trial, on cross-examination, Noriega testified he wrote in his report that the victim told him "five [b]lack males started to attack him." The police returned the wallet, currency, and cellular phone to the victim, which had been seized from defendant. Noriega also testified he was unaware of guidelines established by the Attorney General that required police officers to retain evidence seized from a suspect related to the commission of a crime.

Defendant called Plainfield Police Aide Devon Irving as his sole witness at trial. In response to a question posed by defense counsel, Irving testified that police records showed defendant had an open warrant for his arrest at the time he was transported to the police station to be processed for this offense.

Defendant filed a timely pro se PCR petition on August 15, 2018, asserting his trial counsel was ineffective for failing to: (1) seek a spoliation jury instruction based on the State's failure to preserve material evidence—the victim's wallet and cellular phone—and not seeking an adverse inference jury

charge; (2) request a more complete voir dire of juror number five, who appeared to be asleep during summations; and (3) allow defendant to testify at trial because he wished to do so. In addition, defendant contended his appellate counsel was ineffective for failing to raise these issues on direct appeal.

The judge appointed PCR counsel to represent defendant in the prosecution of his PCR petition. In his certification filed in support of his PCR petition, defendant stated that his trial counsel told him "not to testify because the [c]ourt would not allow [him] to testify about the beating [he] received from the police officers" at the time of his arrest. Defendant certified he wanted to "testify at trial" and "profess [his] innocence" because he "had nothing to do with the robbery." Admittedly, defendant represented that "[t]he only reason [he] ran away when [he] saw the police was because [he] had an open warrant."

Defendant also claimed his trial attorney never discussed testimony that "might have been elicited during the trial" if he chose to take the witness stand or "the generalities regarding giving trial testimony." Accordingly, defendant avers he was "wrongly deprived [of his] constitutional right to testify on [his] own behalf."

On July 26, 2019, the PCR judge conducted oral argument on defendant's PCR petition and reserved decision. On November 8, 2019, Judge Caulfield

issued a comprehensive thirty-page written decision denying defendant's PCR petition insofar as it alleged trial counsel was ineffective for failing to preserve the victim's wallet and cellular phone and for not requesting an adverse inference jury charge; and alleged failure to specifically inquire whether juror number five was attentive during summations.

As to the failure to preserve evidence claim, the judge found defense counsel was not deficient in her handling of the property returned to the victim and "repeatedly brought [up] the fact that the police failed to preserve such evidence to the jury's attention," including in her summation. The judge highlighted that defense counsel cross-examined Officers Noriega and Martina regarding their failure to preserve evidence as required by the Attorney General guidelines.

The judge also determined that defendant "was not entitled to an adverse inference jury instruction, as no constitutional violation occurred." Law enforcement gave the property back to the victim after returning to the police station and after it was inventoried, and a property receipt was created. As explained by the judge, "[t]he record is devoid of any evidence of bad faith or connivance on the part of the police in losing or destroying the wallet and cell[ular] phone."

A-3661-19

Officer Noriega was a police officer for only "about a year" at the time of defendant's arrest and testified "he was unaware of the Attorney General [g]uideline barring return of such property at the time." The judge found no due process violation or prejudice was shown by the loss of this evidence and explained that "defendant seemed to benefit more from the unavailability of the evidence" because defense counsel attacked "the officers' credibility" and effectively argued the State failed to meet its burden.

Regarding juror number five, Judge Caulfield, who was also the trial judge, conducted a voir dire of the juror as follows:

> I think what I'm going to do, because I have to make sure he heard the instructions—not that I don't think the summations are important—but I did notice it a number of times and I have to tell you it looked. . . . to me like he was drunk when he was standing. . . . So what I'm going to do is I'm going to excuse all the jurors, have the door closed, and then I'm going to call him out separately. Then I'm going to ask him about what we observed, because I have to make sure we follow the instructions.

The following colloquy ensued:

THE COURT:          Sir, just take a seat right on the end.

JUROR NO. [FIVE]:   Okay.

THE COURT:          And I didn't call you out here to embarrass you, but I have to

A-3661-19

say that I did notice when I was going over the instruction, which is only about an hour, that it seemed like you were just trying to stay awake.

JUROR NO. [FIVE]: No, I was just—I was absorbing everything, but I was—

THE COURT: Okay.

JUROR NO. [FIVE]: I didn't miss anything, I can assure you of that.

THE COURT: Okay, that's what I wanted to make sure of.

JUROR NO. [FIVE]: Yes.

THE COURT: Okay, because I did notice it and I certainly didn't want to call attention to about what I noticed, but I just wanted to make sure that you absolutely heard things, because I—I know sometimes people listen with their eyes closed.

JUROR NO. [FIVE]: That's normal, yes.

THE COURT: But I wanted to make sure because I wanted to make sure you did hear everything. So do you think you missed anything about the instructions?

JUROR NO. [FIVE]: Absolutely not.

A-3661-19

| | |
|---|---|
| THE COURT: | Nothing at all. All right. And this is sometimes your habit to listen— |
| JUROR NO. [FIVE]: | Yes. |
| THE COURT: | — with your eyes closed? |
| JUROR NO. [FIVE]: | Yes, uh-huh. |
| THE COURT: | Okay. So there's nothing that you missed, you — you listened to everything intently in my instructions? |
| JUROR NO. [FIVE]: | Yes. |
| THE COURT: | Didn't miss a word. |
| JUROR NO. [FIVE]: | No. |

Based upon the voir dire of juror number five, the judge concluded that defense counsel's failure to inquire whether this juror was attentive during summations did not constitute deficient performance.

As to defendant's claim of ineffectiveness of appellate counsel, the judge determined that any arguments which may have been raised regarding the loss of evidence, adverse inference charge, and issues regarding juror number five lacked merit. Therefore, the judge found that defendant's appellate counsel was not ineffective for failing to raise these arguments on direct appeal.

9

However, the judge determined that defendant established a prima facie case of ineffective assistance of counsel regarding his claim that his trial counsel "did not provide him with adequate information and/or advice before he decided not to testify" and ordered an evidentiary hearing limited to that issue. A memorializing order was entered on November 8, 2019.

At the January 10, 2020 evidentiary hearing, defendant was the sole witness who testified. His trial counsel came to the courtroom the day of the hearing, was granted permission by the judge to review defendant's file, but did not testify. Defendant spoke first about wanting to testify at trial:

| | |
|---|---|
| PCR COUNSEL: | . . . when this case went to trial, did you testify on your own behalf? |
| DEFENDANT: | No. |
| PCR COUNSEL: | Did your attorney prepare you to testify on your own behalf? |
| DEFENDANT: | No. |
| PCR COUNSEL: | Did you want to testify at trial? |
| DEFENDANT: | Yes. |
| PCR COUNSEL: | And why is that? |
| DEFENDANT: | To prove my innocence. |

10

PCR COUNSEL: Okay. Was there any other reason why you would've liked to have testified?

DEFENDANT: On behalf that, you know, Plainfield Police lied about what happened actually that night of the situation of the robbery.

PCR COUNSEL: Did you have anything to do with the robbery?

DEFENDANT: No.

PCR COUNSEL: Now, did there come a time when you ran away from officers?

DEFENDANT: Yes.

PCR COUNSEL: And why is that . . . why did you run?

DEFENDANT: Well, I had —

PCR COUNSEL: — if you had nothing to do with it?

DEFENDANT: Well, I had a no-bail warrant at the time, a girlfriend that was three months pregnant and it was just, . . . between that it's just, you know, the no-bail warrant just automatically snapped in my mind and I just ran. And then when I realized why I ran, I stopped. But —

11

and the story they made for trial and the . . . how they wrote it up it made me look like I was guilty of a robbery.

PCR COUNSEL: Now, did you tell that to your trial attorney?

DEFENDANT: I explained it to her many times.

PCR COUNSEL: And notwithstanding that did . . . your attorney prepare you to testify on your own behalf?

DEFENDANT: Not at all.

PCR COUNSEL: Did your attorney tell you what types of questions counsel might ask you if you were to take the witness stand?

DEFENDANT: Not at all.

. . . .

PCR COUNSEL: Did she prepare you for cross-examination?

DEFENDANT: Not at all.

PCR COUNSEL: Did she go over like practice questions?

DEFENDANT: Not at all.

PCR COUNSEL: . . . did you have like a little moot court scenario where she

12

kind of explained to you how things would go and ask you questions?

DEFENDANT: No.

PCR COUNSEL: Nothing like that. Okay. Now, ultimately you said you did not testify.

DEFENDANT: No.

PCR COUNSEL: But if you wanted to, . . . then — why didn't you testify?

DEFENDANT: Due to the fact of the — the officers physically, you know, beating me up. And I explained that situation over and over to her. She felt though as that, you know, I should testify, but for some reason the — we had a seven-day hiatus from court during trial. And she came to see me the day before we went back to court and told me that if I brung the information in as far as the police beating me up, they was not going to allow me to get on the stand. They was going to object to anything that I brung up about the police physically attacking me.

13

On cross-examination, the prosecutor reviewed defendant's answers to PCR counsel's questions about defendant not testifying at trial and provided him with a copy of the trial transcript[1] to refresh his recollection:

> PROSECUTOR: So, [defense counsel], did in fact, argue before this [c]ourt on your behalf to allow you to testify to those injuries, correct?
>
> DEFENDANT: Yes.
>
> PROSECUTOR: And the [c]ourt would not allow you to . . . testify [to] that, correct?
>
> DEFENDANT: As far as what she said, yes.
>
> PROSECUTOR: So, based on that information [defense counsel] to your testimony here today did, in fact, (sic) have a conversation with you about that you couldn't testify to that, correct?
>
> DEFENDANT: Yes.
>
> PROSECUTOR: And so, you wanted to testify to the injuries. So, that was not viable. And during direct examination you also wanted to testify about that you only ran because you had a warrant. Is that correct?
>
> DEFENDANT: Yes.

---

[1] The trial transcript was marked S-1 in evidence.

A-3661-19

PROSECUTOR: In fact, isn't it true that during the course of testimony, [defense counsel] was able to get out the facts that you had an active warrant for you?

DEFENDANT: Yes.

. . .

PROSECUTOR: . . . Isn't it true that [defense counsel] during the course of her . . . summation, during the course of her opening she professed your innocence?

DEFENDANT: Yes.

. . .

PROSECUTOR: And with regards to your right to testify[,] [y]ou were instructed and questioned about that by Judge Caulfield. Is that correct?

DEFENDANT: Yes.

. . .

PROSECUTOR: And you said, no, you did not want to testify. Isn't that correct?

DEFENDANT: Yes.

PROSECUTOR: And during the course of that conversation with the [c]ourt while under oath, isn't it fair to say that you also said that you indicated that you

15

had enough time to speak with [defense counsel] about this request. Isn't that correct?

DEFENDANT: That's correct.

. . .

PROSECUTOR: At any point in time did [defense counsel] refuse to let you testify?

DEFENDANT: No.

PROSECUTOR: She . . . told you in her opinion that it was not in your best interest to testify. Is that correct?

DEFENDANT: Yes.

In response to a question asked by the judge, defendant answered that ultimately, it was his decision not to testify.

After considering defendant's testimony adduced at the PCR hearing, the judge gave a thorough oral opinion on February 21, 2020, denying defendant's petition alleging his trial counsel was ineffective for not having him testify at trial. Specifically, the judge explained that she did not find defendant's testimony credible. The judge also discussed defendant's inconsistent testimony and evasive answers to questions. In particular, the judge highlighted that defendant "seemed to have absolutely no recollection of this court barring the testimony, his potential testimony, about the officers allegedly assaulting him,

16

but he recalled, like it was yesterday — my conclusion, not his words - - about [the prosecutor] and how she objected to the testimony."

The judge also considered there was a "seven-day hiatus" between the discussion about defendant testifying and resumption of the trial. Based upon the observation of defendant's demeanor, including obstinance about answering certain questions, the judge noted he "reluctantly" admitted that defense counsel discussed defendant potentially testifying "periodically" during the trial. Consequently, Judge Caulfield found that defendant's trial counsel was not ineffective; defendant freely waived his right to testify; and no prejudice was shown under the Strickland/Fritz test.[2] A memorializing order was entered. This appeal followed.

Defendant raises the following point for our consideration:

**POINT ONE**

THE PCR COURT IMPROPERLY DENIED DEFENDANT'S CLAIMS THAT HE RECEIVED INEFFECTIVE ASSISTANCE OF HIS TRIAL AND APPELLATE COUNSELS.

A. THE PREVAILING LEGAL PRINCIPLES REGARDING CLAIMS FOR INEFFECTIVE ASSISTANCE OF COUNSEL, EVIDENTIARY

___

[2] Strickland v. Washington, 466 U.S. 668 (1984); State v. Fritz, 105 N.J. 42, (1987).

HEARINGS AND PETITIONS FOR POST-CONVICTION RELIEF.

B. TRIAL COUNSEL WAS INEFFECTIVE FOR DENYING DEFENDANT HIS RIGHT TO TESTIFY IN HIS OWN DEFENSE.

C. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST AN ADVERSE INFERENCE INSTRUCTION ON LOST OR DESTROYED EVIDENCE.

D. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST A MORE EXTENSIVE VOIR DIRE OF A JUROR WHO APPEARED TO BE SLEEPING.

E. APPELLATE COUNSEL PROVIDED DEFENDANT WITH INEFFECTIVE ASSISTANCE.

## II.

As our Supreme Court has reaffirmed, "[t]o prevail on a claim of ineffective assistance of counsel, a defendant must . . . show both: (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the outcome." State v. Pierre-Louis, 216 N.J. 577, 579 (2014) (citing Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 58). Under that test, a defendant must prove (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) "the

18

deficient performance prejudiced the defense." Strickland, 466 U.S. at 687; see also Fritz, 105 N.J. at 58.

We have considered defendant's arguments raised in this appeal in view of the record, the applicable legal principles, and our deferential standards of review, and conclude his contentions lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(2). We discern no legal basis to disturb Judge Caulfield's factual findings in her written decision attached to her November 8, 2019 order, or her February 21, 2020 oral decision. Based on these findings, we reject defendant's arguments and affirm substantially for the reasons expressed by Judge Caulfield. We add the following brief remarks.

Turning first to the issues raised by defendant that were decided without an evidentiary hearing, we "conduct a de novo review of both the factual findings and legal conclusions of the PCR court." State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016) (quoting State v. Harris, 181 N.J. 391, 421 (2004)). Here, we conclude that defendant did not overcome the strong presumption that trial counsel rendered adequate assistance, and his counsel "exercise[d] reasonable professional judgment." Strickland, 466 U.S. at 690. Further, because prejudice is not presumed, defendant must demonstrate how specific errors by counsel undermined the reliability of the proceeding. State v. Drisco,

19

355 N.J. Super. 283, 290 (App. Div. 2002) (citing <u>United States v. Cronic</u>, 466 U.S. 648, 659 (1984)).

The judge correctly found that trial counsel effectively raised the issues regarding return of the victim's wallet and Attorney General guidelines on evidence before the jury during the officers' testimony and her summation. No evidentiary hearing was required on this issue. Moreover, no adverse inference charge was necessitated.

Our Supreme Court has defined the adverse inference charge in the criminal context to be

> analogous to the spoliation inference which may be drawn when evidence has been concealed or destroyed in civil cases. The spoliation inference[,] like the adverse[]inference charge[,] allows a jury in the underlying case to presume that the evidence the spoliator destroyed or otherwise concealed would have been unfavorable to him or her.
>
> [<u>State v. Dabas</u>, 215 N.J. 114, 140 n.12 (2013) (internal citation and quotation marks omitted.)]

Here, defendant argues his trial counsel was ineffective for failing to request an adverse inference instruction because the police returned the victim's wallet and cellular phone to him. We disagree. As noted by the judge, the property was inventoried, and Officer Martina testified he considered it "normal" to return property to a victim. Clearly, there was no bad faith or

20

constitutional violation, and the judge properly found trial counsel was not deficient in failing to request an adverse inference charge. The judge's determination that one officer was newly hired and unfamiliar with the guideline and the other officer's understanding that it was appropriate to return the wallet to the victim was based upon substantial credible evidence in the record. No bad faith was shown by defendant, and he was not prejudiced.

As to the voir dire of juror number five, the questioning by the judge was extensive. The record further reflects the thorough and careful questioning of the juror by the judge, outside the presence of the rest of the jury. There is no basis in the record to support defendant's assertion that juror number five was "dozing off" during defense counsel's summation and when the jury charge was given. The juror confirmed he "didn't miss anything," and we discern no basis to disturb the judge's decision to allow him to continue to serve. Nor is there any proof in the record that juror number five actually fell asleep during defense counsel's summation or reading of the jury charge.

As the judge astutely pointed out in her written opinion:

> All right, counsel. This has happened before and, frankly, I'm satisfied by the juror's responses. You know, I cannot tell you I saw him nodding. When I see nodding sometimes people actually are starting to fall asleep and they nod several times and then their head is — their chin is rested on their chest. I did not see that.

21

A-3661-19

> I just want the record to [be] crystal clear, but I did notice what I restated on the record. I'm not going to repeat it. But the juror, I mean, he responded and said he listened to everything. He said he was closing his eyes but he was concentrating. I don't want to repeat what he just said[.]

Therefore, we conclude the judge took immediate corrective measures in response to trial counsel's comments about the juror being inattentive. The judge did not mistakenly exercise her discretion, and trial counsel was not ineffective because she objected to what she perceived to be an inattentive juror. The integrity of the process was maintained. See, e.g., State v. Reevey, 159 N.J. Super. 130, 133-34 (App. Div. 1978).

To obtain a new trial based on ineffective assistance of appellate counsel, a defendant must establish that appellate counsel failed to raise an issue that would have constituted reversible error on direct appeal. State v. Echols, 199 N.J. 344, 361 (2009). Appellate counsel will not be found ineffective if counsel's failure to appeal the issue could not have prejudiced the defendant because the appellate court would have found either, that no error had occurred or that it was harmless. State v. Reyes, 140 N.J. 344, 364 (1995); see also Harris, 181 N.J. at 499. Consequently, appellate counsel is not required to raise every possible issue and need only raise issues that have a reasonable possibility of success. State v. Gaither, 396 N.J. Super. 508, 515-16 (App. Div. 2007); see

also State v. Morrison, 215 N.J. Super. 540, 549 (App. Div. 1987) (noting "appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by the defendant").

After reviewing the voluminous record, and for the reasons stated in Judge Caulfield's cogent written opinion, we are satisfied that defendant failed to prove ineffective assistance of appellate counsel. Again, return of the victim's wallet and cellular phone may not have revealed third-party fingerprints and exculpated defendant. Saliently, as the judge highlighted, ". . . the fact remains that such evidence was found in defendant's possession at the time he was arrested." The victim clearly testified at trial "that the person who attacked him was the person who took his wallet and cell[ular] phone."

We conclude that appellate counsel was not deficient in failing to raise ineffective assistance of trial counsel on the spoliation of evidence, adverse inference charge, or concerns about juror number five in the direct appeal because these claims are more appropriately brought by way of PCR. State v. Preciose, 129 N.J. 451, 460 (1992). Saliently, defendant failed to show the outcome would have been different but for the errors he alleged. Id. at 463-64 (quoting Strickland, 466 U.S. at 694).

Under these circumstances, defendant was not entitled to an evidentiary hearing as to his claims of spoliation of evidence, failure to request an adverse inference charge, the voir dire of juror number five, or ineffectiveness of appellate counsel. Id. at 461; see also R. 3:22-10.

We also reject defendant's contention that the judge erred in denying his PCR claim that he was prejudiced by trial counsel depriving him of his right to testify at trial following the evidentiary hearing. We generally defer to a PCR judge's factual findings resulting from a plenary hearing when they are based on "adequate, substantial and credible evidence." Harris, 181 N.J. at 415. See State v. Locurto, 157 N.J. 463, 470-71 (1999). When addressing issues of credibility, we recognize that a trial judge has the unique "opportunity to hear and see the witnesses and to have the 'feel' of the case." State v. Johnson, 42 N.J. 146, 161 (1964).

For mixed questions of law and fact, we will uphold "the supported factual findings of the trial court, but review de novo the . . . application of any legal rules to such factual findings." Harris, 181 N.J. at 416 (citation omitted); State v. Williams, 342 N.J. Super. 83, 92-93 (App. Div. 2001). The standard of review on questions of law raised in a PCR petition is de novo. Harris, 181 N.J. at 415.

Defendant argues his trial counsel was ineffective by convincing him not to testify. Criminal defendants have a constitutional right to testify on their own behalf. State v. Bey, 161 N.J. 233, 269 (1999). A defendant's decision whether to testify in a criminal case is an important strategic or tactical decision to be made by a defendant with the advice of counsel. State v. Coon, 314 N.J. Super. 426, 435 (App. Div. 1998).

> [I]t is the responsibility of a defendant's counsel . . . to advise defendant on whether to testify and to explain the tactical advantages or disadvantages of doing so or not doing so. Counsel's responsibility includes advising a defendant of the benefits inherent in exercising that right and the consequences inherent in waiving it. . . . [C]ounsel's failure to do so will give rise to a claim of ineffectiveness of counsel.
>
> [Bey, 161 N.J. at 270 (quoting State v. Savage, 120 N.J. 594, 630-31 (1990)).]

Claims involving the denial of a defendant's right to testify are evaluated under the Strickland test. Id. at 271. During the PCR hearing, the judge questioned defendant extensively about his decision not to testify. Defendant told the judge he spoke to trial counsel "periodically" about testifying and contradicted himself by also stating he only spoke to counsel the day before the trial resumed after a break. Further, defendant testified that when he advised his trial counsel that he wanted to testify, she replied "sure." Thus, by

defendant's own admission, trial counsel advised him of the advantages and disadvantages of testifying, and he voluntarily and knowingly waived his right to testify. We also note that during the trial, the judge questioned defendant directly, under oath, and reviewed with him on the record the ramifications of his decision not to testify. The judge found defense counsel's decision not to have defendant testify to be sound trial strategy based upon substantial credible evidence in the record.

Defendant's remaining arguments—to the extent we have not addressed them—lack sufficient merit to warrant any further discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3661-19